IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
JUDGE WALKER D. MILLER

Civil Action No. 03-cv-02122-WDM-CBS

TOMAS R. CISNEROS,

      Plaintiff,

v.

STATE OF COLORADO, *et al.*,

      Defendants.

---

## ORDER ON MOTION TO DISMISS

---

Miller, J.

      This matter is before me on the defendants' Motion to Dismiss, filed April 28, 2004. For the reasons that follow, the motion will be granted in part, and denied in part.

<u>Background</u>

      As alleged by plaintiff Tomas R. Cisneros (Cisneros), the facts are as follows. Cisneros was employed as a Customer Support Coordinator II by defendant Colorado Department of Labor and Employment (CDLE). In 1997, Cisneros requested reassignment to the third shift so that he might be with his sight-impaired wife during the day, to assist her until their child came home from school. Presumably his request was granted, because in 1999, Cisneros requested to be reassigned to the "swing shift," as his current shift was "a hardship to him." (Compl.,

¶ 21.)

In January 2001, Cisneros notified CDLE that his wife was having back surgery and that he needed to take time off under the Family Medical Leave Act (FMLA) to care for her.  On February 15, 2001, Cisneros himself suffered a back injury from a non-work related accident, and notified CDLE that "he desired to have his medical condition covered" under the FMLA, as well as state law and personnel rules.  As a result of his invoking the FMLA on these instances, he was denied a promotion to Labor and Employment Specialist II, which was given instead to a younger white male.

Although Cisneros underwent conservative treatment for his back injury, his condition worsened, and in October 2001, his doctor restricted him to light duty and recommended major back surgery, which was scheduled for March 2002.  Cisneros notified his immediate supervisor, as well as defendants Steve Uretsky (Uretsky) and Al Sardello (Sardello), who were CDLE supervisors in Cisneros' chain of command.  Cisneros also requested a shift change as an accommodation for his back injury.  It is unclear whether he received a shift change; however, CDLE did place him on light duty.

Around this time, Defendant Sam Jorgensen (Jorgensen) was designated the acting director of Cisneros' unit, and thus became Cisneros' supervisor.  Jorgensen was aware of Cisneros' medical issues, and told other employees that he planned to "get rid" of Cisneros.  (Compl., ¶ 33.)

In December 2001, Cisneros' supervisors began "pressing" him for a definitive answer regarding how long he would need light duty restrictions and what his

2

permanent restriction would be.  On January 25, 2002, Jorgensen sent Cisneros a memo demanding that he provide, by January 30, 2002, information regarding his condition, his operation date, and prognosis, and how long he would be restricted to light duty.  The memo implied that Cisneros' job was in jeopardy.

That same day, Cisneros made a formal complaint to CDLE alleging discrimination.  On January 28, 2002, Cisneros met with Jorgensen and Sardello, who threatened him with potential termination if he did not supply the information requested by Jorgensen by January 30.  Cisneros told them that he needed more time to obtain the information and that their request was unreasonable.  Nonetheless, Cisneros sought to obtain the requested information from his doctor's office, but was told that the spine specialist in charge of his case was out of town.  On February 1, 2002, Cisneros explained this to Sardello, and told him that it would be one-to-two weeks before the information could be provided.  On February 4, 2002, Sardello sent Cisneros an email demanding the information by February 7, 2002.  Cisneros again contacted his doctor's office and requested the information.

Shortly before midnight on February 6, 2002, Cisneros reported to work and discovered that his key-card did not work.  When a co-worker let him in, he was not able to log-in on his computer.  He contacted Jorgensen, who told him that he had placed Cisneros on paid administrative leave at Sardello's instructions, and that Cisneros should leave the building.  Sardello was contacted and decided to allow Cisneros to work that night; however, Cisneros' wife had called the Denver Police Department, and two officers responded, which perturbed Sardello and Jorgensen. In retaliation, Sardello and Jorgensen suspended Cisneros.

3

The next day, Cisneros' doctor's office faxed to CDLE medical confirmation that Cisneros was scheduled to have surgery in March 2002.

Jorgensen, Sardello, and Uretsky ("the Individual Defendants") then attempted to initiate disciplinary action against Cisneros, asking the human resources office to commence an internal investigation regarding unspecified complaints. The complaint does not indicate result of the investigation.

On March 18, 2002, Cisneros had his scheduled back surgery, and was released with substantial restrictions on March 20, 2002. On March 22, 2002, Uretsky sent Cisneros a letter removing him from administrative leave and notifying him that he was expected to return to his regularly scheduled shift on Monday, March 25, 2002. However, the letter also indicated that he had been preliminarily approved for FMLA leave, and that he should contact Uretsky if he was not able to return to work yet.

On March 27, 2002, Cisneros submitted a FMLA request concerning the surgery. On April 2, 2002, CDLE informed Cisneros that it recognized he was protected under FMLA. Cisneros remained on leave until May 2002.

On May 4, 2002, he requested permission to use leave donated from other employees. CDLE denied the request without any good reason.

On May 30, 2002, Cisneros' doctor released him to return to work with certain restrictions, which were communicated to CDLE. Cisneros returned to work, and found that two temporary staff people, both white and younger than he, had been hired. His desk and computer had been removed, and were not returned. Additionally, he was denied access to programs necessary to perform his job.

On June 3, 2002, he was told he would start a new work schedule in which he

would start work in the evening and finish in the early morning.  For unspecified reasons, this created a hardship and interfered with Cisneros' religious practices, and he complained to Jorgensen and Uretsky about it.

On June 7, 2002, Uretsky wrote Cisneros again, seeking a medical opinion regarding the expected length of his work restrictions.

On June 25, 2002, CDLE reassigned Cisneros to the graveyard shift, from midnight to 8:30 a.m.  Because working this shift "enhanced problems for Mr. Cisneros based on his medical condition," he complained to Jorgensen, who told him to file a grievance.  (Compl., ¶ 73.)  Cisneros filed a grievance, which was denied in a Step I resolution proceeding on June 28, 2002.  Based on his perception of the abusive and overtly hostile work environment, Cisneros resigned on June 30, 2002.

On October 27, 2003, Cisneros filed a complaint in this court, asserting the following ten claims: (1) CDLE discriminated against him on the basis of his national origin in violation of Title VII (Claim One); (2) CDLE retaliated against him for complaining about discrimination in violation of Title VII (Claim Two): (3) CDLE violated FMLA "as outlined above" (Claim Three); (4) CDLE violated both Title I and II of the Americans with Disabilities Act (ADA) by discriminating against him on the basis of his disability, including by creating a hostile work environment, and by denying him reasonable accommodations (Claim Four); (5) CDLE violated the ADA by retaliating against him for asserting his rights under the ADA (Claim Five): (6) CDLE violated the Age Discrimination in Employment Act (ADEA) by giving younger individuals preference in promotion and shift changes (Claim Six); (7) CDLE violated Colo. Rev. Stat. § 24-34-402 by discriminating against him on the basis of age,

disability, and national origin (Claim Eight)[1]; (8) the Individual Defendants violated 42 U.S.C. § 1981a by discriminating against him on the basis of his national origin (Claim Nine); (9) the Individual Defendants violated 42 U.S.C. § 1983 by violating his rights guaranteed under Title VII, the ADA, and the ADEA (Claim Ten); and (10) the Individual Defendants violated FMLA and retaliated against him for asserting his FMLA rights (Claim Eleven).

The CDLE, the Individual Defendants, and Jeffrey Wells[2] (altogether "Defendants") have moved for dismissal, arguing that Claims Four, Five, Six, and Eight should be dismissed as barred by the Eleventh Amendment to the U.S. Constitution, and Claims Three, Nine, Ten, and Eleven fail to state a claim.

<u>Standard of Review</u>

Defendants move for dismissal under Fed. R. Civ. P. 12(b)(1) and (6). Under Fed. R. Civ. P. 12(b)(1), a motion to dismiss should be granted if the court does not have subject matter jurisdiction over the case. A motion to dismiss for lack of subject matter jurisdiction may constitute either a facial or factual challenge. *United States v. Holt*, 46 F.3d 1000, 1002 (10th Cir. 1995). Where, as here, the motion attacks the sufficiency of the complaint's allegations, it constitutes a facial challenge, and the court must accept the complaint's allegations as true. *Id.*

A motion to dismiss for failure to state a claim under Fed. R. Civ. P. 12(b)(6)

---

[1]The complaint does not assert a Seventh Claim.

[2]Although Wells is named in the caption, he is not described as one of the parties, and the complaint does not mention him, except for two instances where it notes he received copies of memos sent by Cisneros.

6

should be granted when it appears beyond doubt that the plaintiff could prove no set of facts entitling it to relief.  The court must accept as true all well-pleaded facts and construe all reasonable allegations in the light most favorable to the plaintiff.  *United States v. Colorado Supreme Court*, 87 F.3d 1161, 1164 (10th Cir. 1996).

Discussion

1.    <u>Eleventh Amendment</u>

Defendants argue that Claims Four, Five, Six, and Eight are barred by the Eleventh Amendment.  The Eleventh Amendment provides: "The Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State."  The Supreme Court has interpreted the Eleventh Amendment to provide that "non-consenting States may not be sued by private individuals in federal court."  *Bd. of Trustees of Univ. of Ala. v. Garrett*, 531 U.S. 356, 363 (2000).  The Eleventh Amendment also protects state agents and agencies who are "arm[s] of the state."  *See Regents of the Univ. of Cal. v. Doe*, 519 U.S. 425, 429 (1997).[3]

There are two primary circumstances in which a citizen may sue a state without offending Eleventh Amendment immunity: (1) if Congress abrogates a state's

---

[3]Cisneros appears to concede that CDLE and Wells, sued in his official capacity, are entitled to the protection of the Eleventh Amendment.  Cisneros' complaint alleges that CDLE is "a principal department of the Colorado state government."  *See Ruiz v.* McDonnell, 299 F.3d 1173, 1180 (10th Cir. 2002) (finding Colorado Department of Human Services and its director were arms was arm of state).

immunity; or (2) if the state waives its immunity and consents to be sued.  *Ruiz v. McDonnell*, 299 F.3d 1173, 1181 (10th Cir. 2002).  Only the former is relevant in this case.

    A.    <u>ADA</u>

    Defendants argue that Cisneros' Fourth and Fifth Claims, brought against CDLE under the ADA, are barred by the Eleventh Amendment.  Cisneros argues that his claims, to the extent they assert violations of Title II, are not barred because Congress has validly abrogated the states' immunity for such claims.

    Congress may abrogate the states' "immunity in federal court if it makes its intention to abrogate unmistakably clear in the language of the statue and acts pursuant to a valid exercise of its power under § 5 of the Fourteenth Amendment." *Nevada Dept. of Human Res. v. Hibbs*, 538 U.S. 721, 726 (2003).  *See also Tennessee v. Lane*, 541 U.S. 509, 517 (2004) (internal quotations omitted) (to determine whether Congress has validly abrogated the states' Eleventh Amendment immunity, the court "must resolve two predicate questions: first, whether Congress unequivocally expressed its intent to abrogate that immunity; and second, if it did, whether Congress acted pursuant to a valid grant of constitutional authority"). Regarding the first question, there is no dispute that Congress unequivocally expressed an intent to abrogate the states' immunity under the ADA.  *See Lane*, 541 U.S. at 518 (*quoting*  42 U.S.C. § 12202).

    Consequently, the determinative question is whether Congress acted "pursuant to a valid exercise of its power under § 5 of the Fourteenth Amendment to enforce the substantive guarantees of that Amendment."  *Id.* (*quoting Fitzpatrick v.*

8

*Bitzer*, 427 U.S. 445, 456 (1976)).  § 5 of the Fourteenth Amendment grants "Congress the power to enforce the substantive guarantees contained in § 1 [of the Fourteenth Amendment][4] by enacting 'appropriate legislation.'" *Garrett*, 531 U.S. at 365 (*citing City of Boerne v. Flores*, 521 U.S. 507, 536 (1997)).  Where, as here, the § 5 legislation reaches "beyond the scope of § 1's actual guarantees, [it] must exhibit 'congruence and proportionality between the injury to be prevented or remedied and the means adopted to that end.'" *Id.* (*citing City of Boerne*, 521 U.S. at 520)).

In *Garrett*, the Supreme Court addressed Title I of the ADA, which generally prohibits discrimination based on an individual's disability "in regard to job application procedures, the hiring, advancement, or discharge of employees, employee compensation, job training, and other terms, conditions, and privileges of employment."  42 U.S.C. § 121112(a).  The Court identified the relevant constitutional right as the Fourteenth Amendment's requirement that a state's actions towards disabled persons be rational.  *Garrett*, 531U.S. at 367.  Next, noting that Congress' § 5 power "is appropriately exercised only in response to state transgressions, " the Court found that Congress had failed to "identify a pattern of irrational state discrimination in employment against the disabled."  *Id.* at 368.  Likewise, the Court found that Title I's broad remedial scheme was insufficiently targeted to remedy or prevent unconstitutional discrimination in public employment.  *Id.* at 372-73.

---

[4]§ 1 of the Fourteenth Amendment provides in relevant part that "[n]o State shall make or enforce any law which shall abridge the privileges or immunities of citizens of the United States; no shall any State deprive any person of life, liberty, or property , without due process of law; nor deny to any person within its jurisdiction the equal protection of the laws."

9

Consequently, because the twin requirements that "there must be a pattern of discrimination by the States which violated the Fourteenth Amendment, and the remedy imposed by Congress must be congruent and proportional to the targeted violation" were absent,  the Court held that Congress had not validly abrogated the states' immunity.

However, because the parties did not adequately brief the issue, the *Garrett* Court explicitly refused to address whether a suit brought against a state under Title II of the ADA would likewise be barred.  *Id.* at 360 n.1.[5]  Shortly thereafter, in *Tennessee v. Lane*, 541 U.S. 509 (2004), the Court held that Congress had validly abrogated the states' immunity for suits brought under Title II by individuals who were denied access to the state court system because of their disabilities.  The Court distinguished *Garrett*, finding that Title II was enacted "against a backdrop of pervasive unequal treatment in the administration of state services and programs, including systematic deprivations of fundamental rights."  *Id.* at 524.  Consequently, the Court held that Title II, as applied to cases implicating a fundamental right protected by the Due Process Clause, did constitute a valid exercise of Congress' § 5 authority and validly abrogated the states' immunity in such cases.  *Id.* at 533-34.

Here, Cisneros brings claims under both Title I and II of the ADA alleging that CDLE created a hostile work environment, refused to provide him with the necessary tools and equipment to perform his job function, assigned him unfavorable shifts, and

---

[5]Title II prohibits "any public entity from discriminating against 'qualified' persons with disabilities in the provision or operation of public services, programs, or activities."  42 U.S.C. § 12132.

threatened him with termination because of his disability.  Cisneros concedes that

his Title I claim must be dismissed under *Garrett*, but argues that his Title II claim

survives under *Lane*.  Specifically, he argues that Title II was a valid exercise of

Congress' § 5 authority as applied to his case because as a state employee, he had

a property interest in employment protected by the Due Process Clause under

*Cleveland Board of Education v. Loudermill*, 470 U.S. 532 (1985) (state employee is

entitled a pretermination hearing under Due Process Clause).

I disagree with Cisneros' contention that his case involves fundamental rights

like those in *Lane*.  First, *Loudermill* did not recognize a fundamental right in

government employment–in fact, it explicitly noted that a state employee's "property

interest" in his employment is not created by the Constitution.  *Id.* at 538.  *See also*

*Massachusetts v. Murgia*, 427 U.S. 307, 313 (1976) (holding that there is no

fundamental right to government employment for purposes of the Equal Protection

Clause).

More fundamentally, however, Cisneros' Title II claim in fact asserts that he

was subject to unconstitutional employment discrimination; namely, it alleges that he

suffered harm due to a series of employment-related actions, including the creation of

an hostile work environment, the denial of necessary tools and equipment for him to

do his job, assignment to  unfavorable shifts, threats of termination, and denial of

"other benefits, rights and entitlements of employment."  (Compl., ¶¶ 118 & 121.)  In

fact, his Title II claim alleges the exact same conduct as does his Title I claim.  (*See*

Compl., ¶ 121.)[6]   As a result, the constitutional right invoked by Cisneros' Title II claim is the same as that in *Garrett*: the Fourteenth Amendment's requirement that states act rationally with regards to disabled persons.  531 U.S. at 367.  Consequently, Cisneros' Title II claim is also controlled by *Garrett*'s holding that the ADA, to the extent it attempts to remedy employment discrimination, cannot be considered preventive or remedial legislation addressing a "pattern of discrimination by the States which violates the Fourteenth Amendment." *Id.* at 374.  Therefore, Cisneros' Claim Four must be dismissed in its entirety as barred by the Eleventh Amendment. *See also Thompson v. Colorado*, 278 F.3d 1020, (10th Cir. 2001) (holding, in case alleging that fee charged by state for handicapped parking placards violated ADA, that Title II is not a valid abrogation of the states' Eleventh Amendment immunity).[7]

The parties do not separately discuss Cisneros' Claim Five, asserting retaliation under Title V of the ADA.  As the preceding discussion demonstrates, abrogation analysis may not be applied simply on a statute-wide basis. *See also*

---

[6]In their reply brief, the Defendants appear to argue that a plaintiff may not assert an employment discrimination claim under Title II.  As the Supreme Court noted in *Garrett*, the Courts of Appeals are split on this issue.  531 U.S. at 360 n. 1. *See also Davoll v. Webb*, 194 F.3d 1116, 1130 (10th Cir. 1999) (declining to address the issue but noting the circuit split).  Regardless, I need not address this issue, which was belatedly raised in the reply brief to dispose of this claim.

[7]In his complaint, Cisneros appears to allege that, because the CDLE has received federal funds, it has waived its Eleventh Amendment immunity.  However, he appears to have abandoned this notion, as he does not raise it in his response brief. At any rate, Cisneros provides no authority, and I am aware of none, providing that, absent circumstances where Congress has unambiguously conditioned the receipt of federal funds on a waiver of immunity, such receipt may act as a waiver of Eleventh Amendment immunity. *Cf. Garrett v. Univ. of Alabama*, 344 F.3d 1288, 1293 (11th Cir. 2003).

12

*Thompson*, 278 F.3d at 1027 (noting that "*Garrett* demonstrates that it was error to conduct the abrogation analysis at that level of generality; [i.e., as applied to the entire ADA]").  However, because the issues are so closely intertwined, and because a "defendant's assertion of Eleventh Amendment immunity calls into question the subject matter jurisdiction of the district court," *id.* at 1023, I will address this issue. *See Tafoya v. U.S. Dept. of Justice*, 748 F.2d 1389, 1390 (10th Cir. 1984) ("a federal court must, *sua sponte*, satisfy itself of its power to adjudicated in every case...and the court is not bound by the acts or pleadings of the parties").

The only court of appeals that has addressed this issue held that, at least where the asserted Title V claim is predicated on alleged violations of Title I, a plaintiff may not proceed against a state defendant.  *Demshki v. Monteith*, 255 F.3d 986, 988-89 (9th Cir. 2001).  The *Demshki* court noted that "[t]here is nothing in the ADA's legislative findings demonstrating a pattern of discrimination by states against employees who oppose unlawful employment discrimination against the disabled," and "absent a history of such evil by the states, Congress may not abrogate the states' Eleventh Amendment immunity from Title V claims."   *Id.* at 989.

I find the *Demshki* court's reasoning persuasive.  Consequently, because Cisneros' Claim Five is predicated on claims of unlawful employment discrimination, I find that it must be dismissed.

B.    ADEA

Defendants argue that Cisneros' Claim Six, alleging violations of the ADEA against CDLE, must be dismissed as barred by the Eleventh Amendment.  *See Kimel v. Florida Bd. of Regents*, 528 U.S. 62, 91 (2000) (holding that Congress did not validly

abrogate the states' Eleventh Amendment immunity in passing the ADEA).  Cisneros concedes that this claim should be dismissed.  Accordingly, Cisneros' Claim Six will be dismissed.

C.    Colo. Rev. Stat. § 24-38-402

Defendants argue that Cisneros' Claim Eight must be dismissed as being barred by the Eleventh Amendment.  *See Sturdevant v. Paulsen*, 218 F.3d 1160, 1164 (10th Cir. 2000) ("Eleventh Amendment immunity bars damages actions against a state in federal court, even by its own citizens, unless the state waives that immunity").  Cisneros concedes that this claim should be dismissed.  Accordingly, Cisneros' Claim Eight will be dismissed.

2.    Failure to State a Claim

Defendants argue that Cisneros' Claims Three, Ten, and Eleven must be dismissed as they fail to state a claim.

A.    Claim Three: Family Medical Leave Act.

Cisneros' Claim Three asserts CDLE "violated the provisions of FMLA as outlined above," without indicating which of the complaint's preceding 106 paragraphs describe the relevant conduct.  Consequently, as a first matter, I must interpret the complaint to determine what its relevant allegations are.

Unfortunately, Cisneros' attempt to clarify his allegations in his response brief only makes things more confusing.  As alleged by the complaint, Cisneros sought a shift change in 1997 so he could be home during the day to assist his wife, who is sight impaired.  It appears that this request was granted, because he notes that "this was not a request to be permanently placed on the third shift," and that he sought a

14

subsequent transfer, to "swing shift", in 1999, because his current shift "presented a hardship to him." (Compl, ¶¶ 20-22.) He explicitly alleges that this latter request was denied. (Compl., ¶ 21.) However, in his response brief, he seems to combine the two requests, asserting that he "requested temporary leave from his shift and assignment to the swing shift to accommodate his wife's special needs resulting from her disability," and argues that I should infer that this request was denied. (Resp. Br., at 4.) I disagree, and find rather that Cisneros' response brief, to the extent it asserts that CDLE denied his requests for shift changes sought to assist his wife with her disability (as opposed to his own "hardship"), contradicts his complaint. Therefore I will not consider these allegations. *See Hayes v. Whitman*, 264 F.3d 1017, 1025 (10th Cir. 2001) ("a court may not consider allegations or theories that are inconsistent with those pleaded in the complaint").[8]

Next, Cisneros alleges that he sought protection under the FMLA based on his wife's January 2001 back surgery and his own February 2001 back injury. (Compl., ¶¶ 23-25.) Subsequently, he was denied advancement opportunities later that summer, which he characterizes in his response brief as retaliation for his invocation of the FMLA. Cisneros' response brief does not indicate that any other allegations in his complaint are relevant to his FMLA claim. (*See* Resp. Br., at 4-6.)

The FMLA provides that eligible employees are entitled to 12 workweeks of leave during any 12-month period: (A) because of the birth of a son or daughter of the employee and in order to care for such son or daughter; (B) because of the placement

---

[8]Regardless, a claim arising from either denial would likely be barred under FMLA's statute of limitations. *See* 29 U.S.C. §§ 2617(c)(1) & (2).

of a son or daughter with the employee for adoption or foster care; (C) in order to care

for the spouse, or a son, daughter, or parent, of the employee, if such spouse, son,

daughter, or parent has a serious health condition; and/or (D) because of a serious

health condition that makes the employee unable to perform the functions of the

position of such employee.  29 U.S.C. § 2612(a)(1).  Upon returning from leave

authorized under § 2612(a)(1), the employee is generally entitled to be restored to his

former position, or at least an equivalent position.  29 U.S.C. § 2614(a)(1).  The FMLA

makes it "unlawful for any employer to interfere with, restrain, or deny the exercise of

or the attempt to exercise," any of these statutory rights.  29 U.S.C. § 2915(a)(1).

Defendants first argue that, to the extent Cisneros' FMLA claim relies upon

§ 2612(a)(1)(C) ("the family care provision"), requiring an employer to allow an

employee to take time off for to care for a spouse with a serious health condition, his

claim must fail because he never alleges that CDLE refused to allow him to take time

off.  However, Cisneros' complaint alleges that he was denied a promotion in the

summer of 2001 because he took time off under the FMLA for his wife's back surgery.

(Compl., ¶ 26.)  Defendants do not demonstrate that such an allegation must fail as a

matter of law under the FMLA.  *See* 29 U.S.C. § 2915(a)(1).  *See also Doebele v.*

*Spring/United Mgmt Co.*, 342 F.3d 1117, 1135 (10th Cir. 2003) (noting that the FMLA

"expressly prohibit[s] retaliation against individuals who make charges under or

otherwise exercise rights granted by [its] provisions).  Consequently, Cisneros' FMLA

claim may go forward on this basis.

However, Cisneros also bases his FMLA claim on the allegations that CDLE

interfered with his exercise of his FMLA rights predicated on his own serious health

16

condition, under § 2912(a)(1)(D) (the "self-care provision").  The Tenth Circuit has

held that claims for "interference with, and denial of, medical leave under the self-care

provision of the FMLA," unlike the family care provision, may not be asserted against a

state agency under the Eleventh Amendment.  *Brockman v. Wyoming Department of*

*Family Services*, 342 F.3d 1159, 1163, 1165 (10th Cir. 2003).[9]  Cisneros notes

*Brockman*'s holding, but argues that the Supreme Court would not uphold *Brockman*.

I assume that Cisneros is merely preserving the issue for appeal, and not asking me

to overrule the Tenth Circuit.  Accordingly, his FMLA claim, to the extent he seeks relief

based upon CDLE's refusal to accommodate him for his own health issues, is

barred.

B.    Claim Ten: 42 U.S.C. § 1983

Cisneros' Claim Ten alleges that the individual defendants violated 42 U.S.C.

§ 1983 by illegally discriminating against him in violation of federal law, "including but

not limited to Title VII, Age Discrimination protections and ADA protections."  (Compl.,

¶ 154.)  Defendants argue that this claim must be dismissed because the statutes

Cisneros relies upon foreclose recourse to § 1983.  Cisneros disputes this

---

[9]To the extent Cisneros asserts a "retaliation" claim, as separate somehow from an "interference" claim, as related to the self-care provision, there is no reason why *Brockman* would not apply equally to the former.  *See Hale v. Mann*, 219 F.3d 61, 69 (2d Cir. 2000) (noting that its finding that Congress did not have the authority to abrogate the sovereign immunity of the states on claims arising under § 2612(a)(1)(D) applied also to the related retaliation section "at least when used in conjunction with Section 2612(a)(1)(D)").  *See also Demshki*, 255 F.3d at 988 (finding that Congress had not validly abrogated the states' immunity for substantive provision of the ADA necessarily applies to ADA's retaliation provision, at least where retaliation claim was based on that particular substantive provision).

contention, and also argues that Claim Ten is also based upon the Equal Protection and Due Process Clauses.

"A determination that § 1983 is available to remedy a statutory or constitutional violation involves a two-step inquiry." *Golden State Transit Corp. v. City of Los Angeles*, 493 U.S. 103, 106 (1989). I must determine whether (1) the plaintiff has asserted a federal right; and (2) whether Congress "specifically foreclosed a remedy under § 1983...by providing a comprehensive enforcement mechanism for protection of a federal right." *Id.* (internal quotation omitted). Defendants do not dispute that Cisneros has asserted federal rights under the three statutes, but argues that the comprehensive enforcement mechanisms of all three indicate that Congressional intent to foreclose § 1983 suits.

The Tenth Circuit has explicitly held that "age discrimination claims brought under § 1983 are preempted by the ADEA." *Migneault v. Peck*, 158 F.3d 1131, 1140 (10th Cir.), *vacated on other grounds*, 528 U.S. 110 (2000). The *Migneault* court adopted the holding and the reasoning of the Fifth Circuit in *LaFleur v. Texas Department of Health*, 126 F.3d 758, 760 (5th Cir. 1997), which held that "the ADEA is the sole remedy for person who have been discriminated against based on their age."

Cisneros acknowledges *Migneault's* holding, but attempts to distinguish the case because it did not involve claims brought against persons in their individual capacities nor any assertions of Eleventh Amendment immunity.

I disagree that *Migneault* is distinguishable. First, it is not clear that the relevant defendant in *Migneault*–a faculty member of a state university who was being

18

sued for money damages–was not being sued in her individual capacity.  158 F.3d at 1139.  Nor does it appear to be a relevant consideration.  *See Vinson v. Thomas*, 288 F.3d 1145, 1156 (9th Cir. 2002) (finding a plaintiff cannot bring an action under § 1983 against a state official in her individual capacity to vindicate rights created by the ADA).

Cisneros also argues that because the Eleventh Amendment prevents him from asserting an ADEA claim against CDLE, if he is not permitted to go forward on his     § 1983 claim, he will be denied any remedy for the Defendants' age discrimination.  However, he provides no authority that Eleventh Amendment immunity under one of the federal discrimination statutes is relevant to whether that statute forecloses a claim under § 1983 relying on that statute.  *See Alsbrook v. City of Maumelle*, 184 F.3d 999 (8th Cir. 1999) (en banc) (finding both that state defendants were immune from suit under ADA and that plaintiff could not bring § 1983 suit against individual defendants for alleged violations of the ADA).[10]  Consequently, I am bound by *Migneault*, and find that Cisneros' § 1983 claim cannot rely on a violation of the ADEA nor on allegations of age discrimination.  158 F.3d at 1140.

Next, regarding the ADA, the three Courts of Appeals that have addressed the issue have held that the statute's detailed remedial scheme bars a plaintiff from maintaining a § 1983 action against individual defendants for alleged violations of the

---

[10]Furthermore, I note that the "crucial consideration is what Congress intended."  *Smith*, 468 U.S. at 1012.  Because when it passed the ADEA, as well as the ADA, Congress intended to abrogate the states' immunity, there was no issue of whether allowing a suit to proceed under § 1983 would foreclose a plaintiff's opportunity for any relief.  As a result, this consideration is simply irrelevant to Congressional intent on this issue.

ADA. *See Alsbrook*, 184 F.3d at 1011. *See also Vinson*, 288 F.3d at 1156 (a plaintiff cannot bring a § 1983 suit to vindicate rights created under Title II of the ADA); *Holbrook v. City of Alpharetta*, 112 F.3d 1522, 1531 (11th Cir. 1997) ("a plaintiff may not maintain a section 1983 action in lieu of–or in addition to–a Rehabilitation Act or ADA cause of action if the only alleged deprivation is of the employee's rights created by the Rehabilitation Act and the ADA"). Additionally, as recently reiterated by the Supreme Court, "[t]he provision of an express, private means of redress in the statute itself is ordinarily an indication that Congress did not intend to leave open a more expansive remedy under § 1983." *City of Rancho Palos Verdes v. Abrams*, __ U.S. ____, 125 S.Ct. 1453, 1458 (2005). Here, the ADA provides an express, private means of redress, which Congress intended, as discussed above, to be applicable to state defendants. In light of this trend of authority, I agree that Cisneros' § 1983 claim may not rely upon rights created by the ADA.

Finally, Cisneros appears to concede that his § 1983 claim may not be premised on a violation of Title VII. *See Polson v. Davis*, 895 F.2d 705, 710 (10th Cir. 1990). *See also Jensen v. Bd of County Comm'rs*, 636 F. Supp. 293, 298 (D. Kan. 1986) (*quoting Day v. Wayne County Bd. of Auditors*, 749 F.2d 1199, 1204 (6th Cir. 1984)) ("where employer conduct violates only Title VII, which created new rights and remedies for public employees, an aggrieved employee may not sue under both Title VII and    § 1983").

However, in his response brief, Cisneros also indicates that he is seeking to base his § 1983 claim on the Equal Protection and Due Process Clauses. *See Polson*, 895 F.2d at 710 ("a plaintiff may base a section 1983 claim on actions

20

proscribed by Title VII where those actions also violated the United States Constitution"). *See also Notari v. Denver Water Dep't*, 971 F.2d 585, 587 (10th Cir.1992) ("a § 1983 claim of racial discrimination is independent of a statutory disparate treatment claim arising out of the same set of facts because the § 1983 claim is substantively grounded in the Equal Protection Clause of the Fourteenth Amendment, whereas the disparate treatment claim flows from Title VII," and therefore Title VII does not foreclose § 1983 claim).  With regards to the Equal Protection argument, such a claim may be inferred from his complaint.  (*See* Compl., ¶ 154, noting that defendants violated his "equal protection rights").

However, Cisneros' equal protection claim appears to assert three kinds of discrimination: age, disability, and national origin.  Under *Migneault*, the ADEA preempts any age discrimination claim he might bring under § 1983.  158 F.3d at 1140.  On the other hand, in this Circuit Title VII does not preempt a § 1983 claim asserting national origin discrimination.  *Polson*, 895 F.2d at 710; *Notari*, 971 F.2d at 587.  The Tenth Circuit has not addressed this question with regards to the ADA.

It is not clear from the Tenth Circuit's precedent why there should be a distinction between the Title VII and the ADEA.  Nonetheless, the similarities between Title VII and the ADA convince me that the Tenth Circuit would allow an equal erotection claim asserting disability discrimination to go forward under § 1983.  *See Davoll v. Webb*, 943 F. Supp. 1289, 1302 (D. Colo. 1996) (finding ADA does not preempt § 1983 claim asserting disability discrimination based on *Notari*); *Baumgardner v. County of Cook*,  108 F. Supp. 2d 1041, 1045 (N.D.Ill. 2000) ("[t]he case law developed addressing the issue of whether remedies pursuant to a Section

1983 action may be pled along with a Title VII cause of action is persuasive in this case").  Consequently, Cisneros may move forward on his § 1983 claim, to the extent it alleges that his equal protection rights were violated by national origin and disability discrimination.

However, Cisneros' complaint provides no indication of how he believes his Due Process rights were violated, and his response brief makes no effort to further enlighten me or the Defendants.  Consequently, I find that Cisneros' Claim Ten claim may go forward only with regards to the allegation that the Individual Defendants discriminated against him based on national origin and disability, in violation of his constitutional rights to equal protection.

C.    Claim Eleven: FMLA and § 1983

Claim Eleven appears to assert a claim under both the FMLA and § 1983. Defendants interpret it only as a § 1983 claim, and fail to provide any reason why the Individual Defendants may not be liable directly under the FMLA.  Consequently, Defendants have not demonstrated that the claim, to the extent it asserts that Cisneros is entitled relief directly under the FMLA, must be dismissed.

The Defendants argue that a § 1983 claim may not be based on a violation of FMLA because the statute's comprehensive enforcement scheme indicates that Congress specifically foreclosed a remedy under § 1983.  Cisneros does not respond to this argument.

No court of appeals has addressed this issue, but the vast majority of district courts doing so have held that Congress intended the "specific remedies set forth in § 2617 [to] be the exclusive remedies available for a violation of the FMLA." *See*

*O'Hara v. Mt. Vernon Bd. of Educ.*, 16 F. Supp.2d 868, 895 (S.D. Ohio 1998). *See also Rosania v. Taco Bell of Am., Inc.*, 303 F. Supp.2d 878, 881 (N.D. Ohio 2004); *Kilvitis v. County of Luzerne*, 52 F. Supp.2d 403, 419 (M.D.Pa.1999); *Desrochers v. Hilton Hotels Corp.*, 28 F. Supp.2d 693, 695 (D. Mass. 1998); *Jolliffe v. Mitchell*, 971 F. Supp. 1039, 1045 (W.D. Va. 1997). *But see Knussman v. State of Maryland,* 16 F. Supp.2d 601, 610 (D. Md.1998) (allowing § 1983 claim based on violation of the FMLA).

Those courts prohibiting § 1983 claims based on a violation of the FMLA have noted that "it would be anomalous to hold that when the only unlawful employment practice consists of a violation of the FMLA, the plaintiff can bypass the restrictions on the plaintiff's right to bring and maintain the action under the FMLA by framing the cause of action as one brought under § 1983." *O'Hara*, 16 F. Supp.2d at 894 (*citing Day*, 749 F.2d at 1199. Furthermore, the comprehensive detailed enforcement provisions of FMLA show Congress' intent that § 2617 provide the exclusive remedy for a violation of FMLA. As the *O'Hara* court noted:

> Of even greater importance is the fact that 29 U.S.C. § 2617 sets forth in detail the specific remedies available for a violation of the FMLA. An employer is liable for damages in the amount of any wages, salary, employment benefits, or other compensation denied or lost to such employee by reason of the violation. If no wages, salary, employment benefits, or other compensation have been lost, the employee can recover any monetary loss "such as the cost of providing care, up to a sum equal to 12 weeks of wages or salary for the employee." § 2617(a)(1)(A)(i). The employee also can recover interest on the above amounts calculated at the prevailing rate, § 2617(a)(1)(A)(ii), and an additional amount as liquidated damages equal to the sum of the amounts described in § 2617(a)(1)(A)(i) and (ii), but the court may, in its discretion, not allow liquidated damages if the court is satisfied that the violation "was in good faith and that the employer had reasonable grounds for believing that the act or omission was not a violation of § 2615 of this title." 29 U.S.C. § 2617(a)(1)(A)(iii). The employee also may obtain "such equitable relief as may be appropriate; including

23

employment, reinstatement, and promotion," § 2617(a)(1)(B), and may recover "a reasonable attorney's fee, reasonable expert witness fees, and other costs of the action." § 2617(A)(3).

16 F. Supp.2d at 894.  *See also Jolliffe*, 971 F. Supp. at 1044-45 ("FMLA focuses on very specific injuries and delineates narrowly the remedies for those injuries").

Finally, "[t]he provision of an express, private means of redress in the statute itself is ordinarily an indication that Congress did not intend to leave open a more expansive remedy under § 1983."  *Abrams*, 125 S.Ct. at 1458 (2005).  As noted above, FMLA provides such a private means.

Consequently, I agree with Defendants that, to the extent Cisneros' Claim Eleven asserts a claim under § 1983, it must be dismissed.

D.   Qualified Immunity

Defendants next argue that Cisneros' Claims Nine, Ten, and Eleven should be dismissed against the Individual Defendants on grounds of qualified immunity. "Qualified immunity shields government officials performing discretionary functions from individual liability under 42 U.S.C. § 1983 unless their conduct violates 'clearly established statutory or constitutional rights of which a reasonable person would have known.'"  *Baptiste v. J.C. Penney Co.,* 147 F.3d 1252, 1255 (10th Cir.1998) (quoting *Harlow v. Fitzgerald,* 457 U.S. 800, 818 (1982)).  When qualified immunity is raised in a motion to dismiss, "the plaintiff must carry the burden of establishing that the defendant violated clearly established law."  *Lybrook v. Members of the Farmington Mun. Sch. Bd. of Educ.*, 2323 F.3d 1334, 1337 (10th Cir. 2000).  However, as with any motion to dismiss, Cisneros' claims should not be dismissed as failing to state a claim "unless it appears beyond doubt that the plaintiff can prove no set of

24

facts in support of his claim which would entitle him to relief." *Currier v. Doran*, 242

F.3d 905, 917 (10th Cir. 2001)

First I must determine "whether [the defendants'] actions, as alleged in the

complaint, violated a constitutional or statutory right." *Denver Justice & Peace Cmty,*

*Inc. v. City Of Golden*, 405 F.3d 923, 928 (10th Cir. 2005). *See also Saucier v. Katz*,

533 U.S. 194, 201 (2001) (court must initially consider following question: "Taken in

light most favorable to the party asserting the injury, do the facts alleged show the

officer's conduct violated a constitutional right?").

Defendants argue that I may stop my analysis at this stage, because "[a]s

detailed in Section II of this Motion, Plaintiff's § 1981 and 1983 claims are not valid."

(Mot. Dismiss, at 16.)  However, Defendants' motion never actually addresses

Cisneros' § 1981 claim (Claim Nine), and although Defendants ask in their reply brief

that I apply the arguments regarding the § 1983 claim to this claim, this request is

neither proper nor, given the differences between the two statutes, workable.

Regardless, Cisneros' complaint alleges that he was denied a promotion in favor of a

white co-worker, was harassed, was suspended, and that he was investigated for

wrongdoing because of his national origin.  Under the applicable standard of review,

such is sufficient to allege a violation of § 1981.

Next, as found above, Cisneros' § 1983 claim (Claim Ten) does not state a

cognizable claim to the extent it relies on violations of Title VII, the ADA, and the ADEA.

Consequently, the question becomes whether Cisneros adequately alleged any

constitutional violations.  As I discussed above, although Cisneros mentions the Due

Process Clause, neither his complaint nor his response provide any indication of how

25

his Due Process rights were violated, and therefore he has not established that his complaint alleges a violation of the Due Process Clause.

However, interpreted liberally, Claim Ten alleges that he suffered various employment-related actions based on his national origin and disability,[11] in violation of his rights under the Equal Protection Clause.  Specifically, the complaint alleges the denial of a promotion, denial of permission to receive donated sick leave, deprivation of equipment necessary to do his job, assignment unfavorable shifts, and wrongfully suspended, all based on his national origin and disability.  (*See* Compl., ¶¶ 85, 118, 132.)  Consequently, I find that Claim Ten alleges a violation of federal rights.

Finally, with regards to Cisneros' FMLA claim (Claim Eleven), Defendants again ignore the fact that Cisneros alleges that the individual defendants interfered with his rights under the FMLA, in direct violation of 29 U.S.C. § 2615(b).  Specifically, the complaint alleges that Cisneros was, inter alia, denied promotions and harassed for his invocation of the FMLA.  This sufficiently alleges a violation of a federal statutory right.

Consequently, because I have found that the three claims allege violations of federal rights, the next question is whether the rights are clearly established.  *Saucier*, 533 U.S. at 201.  *See also Currier*, 242 F.3d at 923 ("Once defendants raise the defense of qualified immunity, the plaintiff must demonstrate to the court that the law on which the plaintiff relies was clearly established at the time of the defendants'

---

[11]Cisneros also alleges that these actions were based upon his age; however, as discussed above, his § 1983 claim is preempted by the ADEA to the extent it relies on allegations of age discrimination.

actions"). However, because Defendants relied solely upon the first prong of the qualified immunity analysis, Cisneros should not be penalized for failing to address whether the rights he seeks to protect are clearly established. Consequently, I find that Defendants motion should be denied as to these three claims, without prejudice to Defendants seeking qualified immunity in a subsequent dispositive motion.[12]

Accordingly, it is ordered:

1.   Defendants' Motion to Dismiss, filed April 28, 2004 (Docket # 17), is granted in part, and denied in part.

2.   Plaintiff's Claim Three remains pending to the extent it alleges that Defendant CDLE violated Plaintiff's rights arising from the "family care" provision of the FMLA, 29 U.S.C. § 2612(a)(1)(C) by denying him a promotion in the summer of 2001 because of leave taken on account of his wife's surgery. It is otherwise dismissed with prejudice.

3.   Plaintiff's claims Four, Five, Six, and Eight are dismissed with prejudice.

4.   Plaintiff's Claim Ten remains pending to the extent it asserts that the Defendants Jorgensen, Sardello, and Uretsky, violated his rights protected under the Equal Protection Clause. It is otherwise dismissed with prejudice.

5.   Defendants' motion as to Claim Eleven is denied without prejudice to the Individual Defendants seeking dismissal on the basis of qualified

_____

[12]Consequently, I do not address whether in this Circuit a defendant must demonstrate that his or her conduct is discretionary to secure qualified immunity. *Cf Storck v. City of Coral Springs*, 354 F.3d 1307, 1314 (11th Cir. 1995).

immunity.

6.     In summary, this case remains pending on Claims One, Two, Three (as

limited in ¶ 2 *supra*), Nine, Ten (as limited in ¶ 4 *supra*), and Eleven.

7.     Magistrate Judge Shaffer's June 17, 2004 order staying this case is

vacated.

DATED at Denver, Colorado, on July 21, 2005.

BY THE COURT:


/s/ Walker D. Miller
United States District Judge