IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
JUDGE WALKER D. MILLER

Civil Action No. 03-cv-02122-WDM-CBS

TOMAS R. CISNEROS,

     Plaintiff,

v.

THE STATE OF COLORADO, *et al.*,

     Defendants.

---

## ORDER ON MOTION FOR SUMMARY JUDGMENT

Miller, J.

This matter is before me on a motion for summary judgment filed by Defendants on October 25, 2006. I have reviewed the parties' written arguments and their summary judgment evidence and find that oral argument is not required. For the reasons that follow, the motion will be granted.

Background[1]

This case was filed by Tomas R. Cisneros (Plaintiff) against the State of Colorado; Department of Labor and Employment (CDLE); Jefferey Wells, in his official capacity as Executive Director; and Steve Uretsky, Sam Jorgensen, and Al Sardelo, all individually (Individual Defendants) (collectively Defendants) alleging various forms of discrimination and retaliation. In 2001 Plaintiff was employed by the CDLE in the Information Management Office (IMO) with the Computer Operations Support Unit.

---

[1] Unless otherwise noted, the background facts, drawn from the parties' factual statements and supporting evidence, appear to be undisputed.

Wilbert Velasquez managed the unit until he retired in December 2001.  At that time, Sam Jorgensen became the acting supervisor and was later permanently appointed to the position.  Notably, prior to becoming supervisor, Jorgensen made a comment indicating that he would fire Plaintiff if he had the ability.

In October 2001, after a back injury in February 2001, Plaintiff requested temporary light duty work.  CDLE requested that Plaintiff provide medical information in demonstrating and specifying his back injury and restriction to light duty.  It is disputed as to whether Plaintiff ever provided CDLE with the requested medical information.  Defendants contend that they repeatedly requested medical information from Plaintiff but never received it.  Plaintiff, on the other hand, contends that he provided Defendants with medical information on numerous occasions and that he was not requested to provide any additional information.

It is undisputed, however, that in January 2002, CDLE requested Plaintiff provide information on the duration of his light duty restriction.  After apparently not receiving the requested information, CDLE told Plaintiff not to report to work on February 7, 2002 if he did not turn in the requested medical information.  However, Plaintiff reported for his February 7th shift at midnight the night before without the requested information.  Plaintiff contends that he believed he was not required to turn in the medical information until after his shift although Defendants have pointed to testimony that demonstrates otherwise.  In any event, Plaintiff had some trouble entering the building with his standard codes that day.  He did, however, manage to enter the building.  Defendants maintain that they agreed to let Plaintiff work for the day

2

even though he had not provided his medical information. Plaintiff appears to agree with this fact although he also contends that he was suspended from his job before he arrived at work because his access codes were disabled. Regardless, after arriving at work, Plaintiff phoned his wife at home. Perceiving him to be in a hostage situation, she called the police and twelve police officers responded to CDLE. After completing their investigation, police escorted Plaintiff out of the building and obtained his IMO access cards. On February 7th, Plaintiff was placed on administrative leave. It is disputed whether this was in response to a request from Plaintiff or on CDLE's own initiative, but it is undisputed that Plaintiff requested administrative leave.

A human resources investigator was assigned to investigate the alleged hostage event. In an interview with the investigator, Jorgensen stated that he viewed Plaintiff as a "rigid Hispanic patriarch." Defendants contend that this was a statement by Jorgensen referring to the way that Jorgensen thought Plaintiff viewed himself. Plaintiff maintains that this was a racially derogatory remark. This is the only racial remark that Plaintiff alleges. However, on April 24, 2002, Plaintiff filed a complaint with the Equal Employment Opportunity Commission (EEOC) alleging discrimination.

Plaintiff had back surgery in March 2002 and returned to work in June 2002 on the day shift. Although the reasons are disputed, Plaintiff was moved to the swing shift in mid-June 2002. Again, there exists a dispute as to why, but Plaintiff was eventually moved to the graveyard shift. While he worked in June 2002 Plaintiff was required to share a desk and computer with another worker. Defendants maintain that space restrictions required that desks and computers be shared and that Plaintiff and the co-

3

worker were on opposite shifts.  On June 27, 2002 Plaintiff requested and was granted

a Step I grievance meeting with CDLE at which he complained, among other things,

about his shift assignment and his lack of a personal desk and computer.  On June 28,

2002 Plaintiff filed this grievance and announced his retirement.

<u>Standard of Review</u>

Summary judgment is appropriate when there is no genuine issue as to any

material fact and the moving party is entitled to judgment as a matter of law.  Fed. R.

Civ. P. 56.  A factual issue is genuine if "the evidence is such that a reasonable jury

could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby*, 477 U.S.

242, 248 (1986).

Where "the moving party does not bear the ultimate burden of persuasion at

trial, it may satisfy its burden at the summary judgment stage by identifying 'a lack of

evidence for the nonmovant on an essential element of the nonmovant's claim.'"

*Bausman v. Interstate Brands Corp.*, 252 F.3d 1111, 1115 (10th Cir. 2001) (quoting

*Adler v. Wal-Mart Stores, Inc.*, 144 F.3d 664, 671 (10th Cir. 1998)).  Then, "[t]o avoid

summary judgment, the nonmovant must establish, at a minimum, an inference of the

presence of each element essential to the case." *Id.*

<u>Discussion</u>

Following my July 22, 2005 Order on Motion to Dismiss (Docket No. 46) and

Plaintiff's amendment of his Complaint (Docket No. 70), Plaintiff currently has seven

claims pending against Defendants: (1) CDLE discriminated against Plaintiff based on

national origin in violation of Title VII (First Claim); (2) CDLE retaliated against Plaintiff

4

after he complained of discriminatory actions by Defendants in violation of Title VII (Second Claim); (3) CDLE violated the family care provision of the Family Medical Leave Act (FMLA) (Third Claim) (claim limited by my July 22, 2005 Order); (4) the Individual Defendants discriminated against Plaintiff based on national origin in violation of § 1981a (Ninth Claim); (5) the Individual Defendants violated Plaintiff's right to equal protection by discriminating against him in the basis of national origin, age, and disability (Tenth Claim); (6) the Individual Defendants violated the FMLA and retaliated against Plaintiff for asserting his FMLA rights (Eleventh Claim); and (7) CDLE discriminated and retaliated against Plaintiff in violation of the Rehabilitation Act (Twelfth Claim).  Defendants move for summary judgment with respect to all claims. Plaintiff opposes this motion as to all but the Third Claim which Plaintiff has dropped. *See* Pretrial Order at 5.

1.  Exhaustion of Administrative Remedies

Defendants argue that Plaintiff's causes of action must be limited to certain events based on his April 24, 2002 EEOC charge.  Specifically, they argue that (1) any events occurring prior to June 29, 2001 (300 days prior to filing date of the EEOC charge) are time-barred; and (2) this court does not have jurisdiction over events occurring after April 24, 2004 (filing date of the EEOC charge) because Plaintiff failed to exhaust administrative remedies with respect to those events.  "Title VII requires a litigant to file a claim within 300 days of the alleged discriminatory conduct." *Duncan v. Manager, Dep't of Safety, et al.*, 397 F.3d 1300, 1308 (10th Cir. 2005); 42 U.S.C. § 2000e-5(e)(1).  And, a plaintiff is required to exhaust administrative remedies with the

EEOC prior to filing a Title VII claim in federal district court.[2] *Simms v. Oklahoma ex. rel., Dep't of Mental Health and Substance Abuse Servs.*, 165 F.3d 1321, 1326 (10th Cir. 1999); *Shikles v. Sprint/United Mgmt. Co.*, 426 F.3d 1304, 1317 (10th Cir. 2005) (citations omitted). "Thus, a plaintiff normally may not bring a Title VII action based upon claims that were not part of a timely-filed EEOC charge for which the plaintiff has received a right-to-sue letter." *Simms*, 165 F.3d at 1326. Furthermore, "each discrete incident of [discriminatory] treatment constitutes its own 'unlawful employment practice' for which administrative remedies must be exhausted." *Martinez v. Potter*, 347 F.3d 1208, 1210 (10th Cir. 2003) (citing *Nat'l R.R. Passenger Corp. V. Morgan*, 536 U.S. 101, 110–13 (2002)).[3] This rule applies equally to events occurring more than 300 days before the EEOC charge was filed and to events occurring after the EEOC charge was filed. *Id.* at 1210–11.

---

[2] Although *Zipes v. Trans World Airlines, Inc.*, 455 U.S. 385 (1982), held that exhaustion of administrative remedies was not a jurisdictional requirement to suit in federal court, the Tenth Circuit has continued to view exhaustion of remedies as a jurisdictional requirement. *See generally Jones v. Runyon*, 91 F.3d 1398, 1400 n.1 (10th Cir. 1996) (discussing Tenth Circuit authority that exhaustion of remedies is a jurisdictional requirement). Other circuits have interpreted the *Zipes* decision to mean that exhaustion of administrative remedies is a "condition precedent or an affirmative defense that can be waived if it is not asserted by the defendant." *Id.; see also Shikles v. Sprint/United Mgmt. Co.*, 426 F.3d 1304, 1317 (10th Cir. 2005) ("Unlike many other circuits, we have held that a plaintiff's exhaustion of his or her administrative remedies is a jurisdictional prerequisite to suit under Title VII-not merely a condition precedent to suit."). In this case, just as in *Jones*, the distinction is irrelevant as Defendants have argued that Plaintiff failed to exhaust administrative remedies. *See Jones*, 91 F.3d at 1400 n.1.

[3] This is a change from prior Tenth Circuit precedent which held that a judicial complaint may include discriminatory acts not included in the EEOC charge if those acts were "like or reasonably related to" the allegations in the EEOC charge. *Martinez*, 347 F.3d at 1210 (discussing the impact of *Morgan* on the "continuing violations" doctrine).

However, because claims of hostile work environment generally involve a "series of incidents that span a period longer than 300 days[,] . . . as long as 'an act' contributing to a hostile work environment took place no more than 300 days before the plaintiff filed an EEOC charge, a court may consider the complete history of acts comprising that hostile work environment." *Duncan*, 397 F.3d at 1308 (quoting *Morgan*, 536 U.S. at 117).   A series of events comprise a hostile work environment when "'the pre- and post-limitations period incidents involve[] the same type of employment actions, occur[] relatively frequently, and [are] perpetrated by the same managers.'" *Id.* at 1309 (quoting *Morgan*, 536 U.S. at 120).   Therefore, to determine if a court can consider acts outside the limitations period, the acts must be compared to the acts within the limitations period in terms of "type, frequency, and perpetrator." *Id.*

Defendants argue that this Court cannot consider Plaintiff's allegations of shift assignments made in June 2002; lack of access to a desk and computer in June 2002; requests for medical information in June 2002; and constructive discharge in June 2002 because they occurred after the filing date of the EEOC charge and, therefore, Plaintiff has not exhausted administrative remedies for them.   Furthermore, Defendants allege that the denial of a promotion to Labor Employment Specialist II in June 2001 is time-barred because it occurred outside the limitations period for the EEOC charge (300 days prior to the filing date or June 28, 2001).   Plaintiff responds by claiming that the denial of access to the building, the denial of a desk and computer of his own, and his being reassigned to the graveyard shift, although occurring after the EEOC charge filling date, are part of a hostile work environment and, therefore, this Court should

7

consider the these events.  Notably, Plaintiff does not dispute Defendants' argument

that the denial of a promotion to Labor Employment Specialist II is time-barred as

occurring more than 300 days prior to the filling of Plaintiff's EEOC charge.  Therefore,

I will grant Defendants' motion as to the denial of a promotion in June 2001.

In determining if acts outside the limitations period are part of a hostile work

environment, I must look at acts within the limitations period and determine if the acts

outside are related in type, frequency, and perpetrator.  In this case, the acts within the

limitations period are: Plaintiff was denied the opportunity to apply for a supervisory

position; he was given the graveyard shift and his requests for transfer to another shift

were denied; he was threatened with discharge; he was barred from work in February

2002; he was suspended from work in February 2002; he was investigated; he was

targeted for discipline; and he was called a "rigid Hispanic patriarch."  I find that

placement on the graveyard shift is related in type, frequency, and perpetrator to acts

within the limitations period.  Indeed, Plaintiff alleges multiple occasions both in and out

of the limitations period during which he was required to work the graveyard shift even

after he requested to be removed from it.  The other acts, however, are not related by

type, frequency, or perpetrator to the acts falling within the limitations period.  Both the

denial of access to the building with a key and the refusal to provide Plaintiff with his

own desk and computer, while perhaps perpetrated by Jorgensen, are acts that

occurred only for a limited time and are dissimilar to any acts falling within the

limitations period.  Plaintiff does not allege that Defendants failed to provide him with

necessary materials or access to the building or materials at any time during the

8

limitations period. Therefore, I will not include these acts when considering the claim of hostile work environment.

Both Defendants and Plaintiff have failed to argue about exhaustion of remedies with regard to transfer of sick leave in June 2002 or constructive discharge in June 2002. However, because this is a question of subject matter jurisdiction, *Shikles v. Sprint/United Mgmt. Co.*, 426 F.3d 1304, 1317 (10th Cir. 2005), I will address the issue. I find that the issue of transferred sick leave is unrelated to the acts falling within the limitations period because, as it deals with a denial of benefits, it is a different type than any act found within the limitations period. Furthermore, it was a single occurrence and is therefore not related by frequency.

Whether Plaintiff has exhausted administrative remedies with respect to constructive discharge is a much more difficult question. However, because I find that Plaintiff's claim for constructive discharge does not survive summary judgment on its merits, I need not reach the issue of exhaustion of remedies.

2. Discrimination

Defendants make a combined argument for summary judgment on Plaintiff's First (Title VII discrimination), Ninth (§ 1981 discrimination), and Tenth (§ 1983 violation by discrimination) Claims. *See Drake v. Ft. Collins*, 927 F.2d 1156, 1162 (10th Cir. 1991) ("[I]n racial discrimination suits, the elements of a plaintiff's case are the same, based on the disparate treatment elements outlined in *McDonnell Douglas*, whether that case is brought under § § 1981 or 1983 or Title VII."). Defendants argue that Plaintiff has not shown direct discrimination and that he cannot prevail under the *McDonnell*

*Douglas* burden shifting framework because he fails to show a genuine issue of material fact as to all the elements of the *prima facie* case. *McDonnell Douglas v. Corp. v. Green*, 411 U.S. 792, 802–804 (1973) (establishing three step framework for summary judgment in discrimination cases where 1) plaintiff must establish a *prima facie* case; 2) defendant must provide legitimate, non-discriminatory reasons for its action; and 3) plaintiff must show defendant's reasons are merely pretext for discrimination). Plaintiff alleges that there is direct evidence and that he has moved through the *McDonnell Douglas* framework and ultimately shown pretext. I agree with Defendants.

Defendants allege that Plaintiff has not put forth evidence sufficient to prove discrimination directly. Plaintiff contends that Jorgensen's comment that Plaintiff is a "rigid Hispanic patriarch" coupled with his comment that he would fire Plaintiff if he could are sufficient to directly prove discrimination. I disagree. Direct evidence of discrimination is evidence that, on its face and without inference, shows that the employer acted with discriminatory intent. *See Hall v. U.S. Dep't Labor*, 476 F.3d 847, 854–55 (10th Cir. 2007). Even though Jorgensen's comment that Plaintiff is a "rigid Hispanic patriarch" provides the necessary racial component for direct evidence, the two statements do not show that an adverse employment action was motivated by a discriminatory intent. *See Shorter v. ICG Holdings, Inc.*, 188 F.3d 1204, 1207 (10th Cir. 1999). Therefore, Plaintiff must proceed on his claims with indirect evidence of discrimination.

Defendants argue that they are also entitled to summary judgment based on the

10

*McDonnell Douglas* burden shifting framework. They allege that Plaintiff has not established a genuine issue of material fact as to every element of the *prima facie* case in the first step of the framework and that Plaintiff cannot prove pretext in the final step. Because I find that Plaintiff has not met his *prima facie* burden I do not reach the issue of whether Plaintiff has demonstrated pretext. Generally, a plaintiff must show three things in a *prima facie* case of disparate treatment: (1) membership in a protected class; (2) some adverse employment action; and (3) an inference of discriminatory intent. *See Kendrick v. Penske Trans. Srvs., Inc.*, 220 F.3d 120, 1227–29 (10th Cir. 2005) (noting that the "critical prima facie inquiry in all cases is whether the plaintiff has demonstrated that the adverse employment action occurred 'under circumstances which give rise to an inference of unlawful discrimination.'" (quoting *Tex. Dep't Cmty. Affairs v. Burdine*, 450 U.S. 248, 253 (1981))). For many types of disparate treatment, however, there are variations on this *prima facie* case. *Id.* at 1227.

Defendants allege that Plaintiff has not meet his initial burden as to the second or third elements of the *prima facie* case. Specifically, Defendants argue that Plaintiff has not suffered an adverse employment action that has taken place under circumstances which provide an inference of discrimination. They contend that none of the actions Plaintiff has alleged rise to the standard of an adverse employment action. "The Tenth Circuit liberally defines the phrase 'adverse employment action.'" *Sanchez v. Denver Pub. Schs.*, 164 F.3d 527, 532 (10th Cir. 1998). An adverse employment action is determined on a "case-by-case approach" and requires examination into the "unique factors relevant to the situation at hand." *Id.* (citing *Jeffries v. Kansas*, 147

11

F.3d 1220, 1232 (10th Cir. 1998)). For example, conduct is adverse if it constitutes "a significant change in employment status, such as hiring, firing, failing to promote, reassignment with significantly different responsibilities, or a decision causing a significant change in benefits." *Burlington Indus. V. Ellerth*, 524 U.S. 742, 761 (1998) (addressing a tangible employment action in vicarious liability context). However, "mere inconvenience or an alteration of job responsibilities" is not an adverse employment action. *Sanchez*, 164 F.3d at 532 (citing *Crady v. Liberty Nat'l Bank & Trust Co.*, 993 F.2d 132, 136 (7th Cir. 1993)).

Plaintiff responds by articulating nine actions that he contends are adverse employment actions.[4] Some of these actions I have concluded above are not timely and I will not discuss them here (denied promotion to Labor Employment Specialist II and given restricted and insufficient access the building, computer, and desk). The claims for hostile work environment and constructive discharge were brought under the retaliation provision and are addressed in that section below. The remaining actions that Plaintiff cites are that he was forced to work on the graveyard shift while non-Hispanics were given the day and swing shifts; he was barred from work on February 6, 2002; he was suspended from work on February 7, 2002; and he was targeted for discipline and investigated.

I agree with Defendants that none of these actions constitute adverse employment actions. The graveyard shift, although perhaps undesirable, is merely a

---

[4] Notably, in their reply brief, Defendants do not specifically respond to the nine allegedly adverse employment actions. However, in their brief in support of the motion for summary judgment, Defendants address most of the actions.

shift in job responsibilities or inconvenient to the employee and does not constitute a change in employment status. *See McGowan v. City of Eufala*, 472 F.3d 736, 743 (10th Cir. 2006) (holding denial of a change to the day shift is not a materially adverse employment action in the context of a retaliation claim); *Sanchez*, 164 F.3d at 532 (holding that a teacher's transfer to a different school was not an adverse employment action). Similarly, being investigated does not constitute any change in the employment status; it is merely that a supervisor or other person is specifically examining employment history, job performance, or an employment-related incident. This does not rise to the level of an adverse employment action as the Tenth Circuit has articulated the standard. *See Sanchez*, 164 F.3d at 532.

Suspension from work requires a much closer inquiry. Actually, Plaintiff was not suspended from work, but rather was placed on administrative leave. I conclude that this was not an adverse employment action because there was no change in his employment, pay, or benefits. Although the Tenth Circuit has not dealt with this issue, other circuits have reached the same conclusion. *See, e.g., Joseph v. Leavitt*, 465 F.3d 87, 91 (4th Cir. 2006) (holding that administrative leave with pay during an investigation and pending criminal trial is not an adverse employment action and cataloguing the other four circuits to hold the same). Similarly, having his access card rendered inoperable is also not an adverse employment action. This happened only once and, in fact, was not even an inconvenience to Plaintiff as he was immediately let into the building by a co-worker. Therefore, Plaintiff has not been able to meet his *prima facie* burden for his First, Ninth, or Tenth Claims and summary judgment for

Defendants is appropriate.[5]

Plaintiff also alleges that he was denied the opportunity to become the supervisor of IMO after the existing supervisor retired in December 2001. To establish a *prima facie* case of failure to promote, a plaintiff must show (1) he is a member of a protected class; (2) he applied for and was qualified for the position; (3) he was not given the promotion despite being qualified; and (4) the position remained open after plaintiff was rejected. *Gutierrez v. Denver Post, Inc.*, 691 F.2d 945, 947 (10th Cir. 1982). Although poorly developed, Defendants point to a lack of evidence in support of the second element—that Plaintiff was qualified for the position. In response, Plaintiff merely states "the evidence shows Cisneros had appropriate qualifications and had managed a program before," but cites no specific facts to show that Plaintiff was qualified to perform the job of IMO supervisor. (Pl.'s Resp. Def.'t Mtn. Summ. J. at 35.) As specific facts beyond mere conclusory allegations are required to survive summary judgment, Plaintiff's argument is insufficient. *Serna v. Colo. Dep't of Corr.*, 455 F.3d 1146, 1151 (10th Cir. 2006) ("The plaintiff must go beyond the pleadings and 'designate specific facts so as to make a showing sufficient to establish the existence of an element essential to that party's case. . . .'" (citing *Sealock v. Colorado*, 218 F.3d 1205, 1209 (10th Cir. 2000))). Therefore, Defendants' motion for summary judgment with respect to the failure to promote claim should be granted.

3. Retaliation

Plaintiff's Second Claim alleges retaliation in the form of suspension from work,

---

[5] The claim of disability discrimination also fails because Plaintiff is not disabled within the meaning of the Americans with Disabilities Act. *See* Section 4.

hostile work environment, and constructive discharge. Defendants argue that Plaintiff fails to allege facts sufficient for retaliation under any form of retaliation.

a. Suspension or Administrative Leave

To establish a *prima facie* case for retaliation, a plaintiff must demonstrate (1) he engaged in a protected activity; (2) he was subjected to adverse employment action; (3) there is a "causal connection between the protected activity and the adverse employment action." *Gunnell v. Utah Valley State College*, 152 F.3d 1253, 1262–63 (10th Cir. 1998). Defendants do not dispute that Plaintiff engaged in protected activity in January 2002 by making an internal complaint regarding discrimination or that Plaintiff was placed on administrative leave in February 2002. Defendants argue that Plaintiff cannot establish the causal connection between the complaint and the administrative leave. Although Defendants do not specifically raise the issue with respect to Plaintiff's retaliation claim, they argue in their brief that administrative leave is not an adverse employment action. As discussed above, I agree. *See Joseph v. Leavitt*, 465 F.3d 87, 91 (4th Cir. 2006) (holding that administrative leave with pay is not an adverse employment action and cataloguing the other four circuits to hold the same). Therefore, I find that Plaintiff has not met his *prima facie* burden with respect to retaliation based on administrative leave in February 2002.

b. Hostile work environment

To establish a hostile work environment *prima facie* case, a plaintiff must show "'under the totality of the circumstances (1) the harassment was pervasive or severe enough to alter the terms, conditions, or privilege of employment, . . . and (2) the

15

harassment was racial or stemmed from racial animus." *Bolden v. PRC, Inc.*, 43 F.3d 545, 551 (10th Cir. 1994) (citation omitted). A plaintiff must show "more than a few isolated incidents of racial enmity."' *Id.* (citing *Hicks v. Gates Rubber Co.*, 833 F.2d 1406, 1412 (10th Cir. 1987)). Defendants argue that Plaintiff has not demonstrated harassment that rises to the level of a hostile environment. Plaintiff contends that his lack of keys, personal desk, or personal computer, and assignment to the graveyard shift constitute a hostile work environment. I concluded above, however, that I cannot consider the lack of access to the building, personal desk, and personal computer because Plaintiff failed to exhaust his administrative remedies with respect to these claims. Therefore, the only act that Plaintiff is left with to demonstrate a hostile work environment is assignment to the graveyard shift. An assignment to an undesirable shift is not sufficient to demonstrate a hostile work environment. Furthermore, even if all acts were considered, Plaintiff alleges no acts that are "pervasive or severe enough to alter the terms, conditions, or privilege of employment" or that provide an inference of racial animus. *Id.* Indeed, sharing space does not significantly affect employment and there is no evidence submitted other than a single remark by one person (that Plaintiff is a "rigid Hispanic patriarch") that even references race. Therefore, Defendants motion for summary judgment on the retaliation claim based on hostile work environment should be granted.

c. *Constructive Discharge*

A claim for constructive discharge is an aggravated case of hostile work environment. *See Hall v. U.S. Dep't Labor*, 476 F.3d 847, 852 (10th Cir. 2007)

16

(acknowledging that a constructive discharge claim based on hostile work environment "'can be regarded as an aggravated case of . . . hostile work environment'" (quoting *Pa. State Police v. Suders*, 542 U.S. 129, 146 (2004))). Constructive discharge occurs when "an employer, through unlawful acts, makes working conditions so intolerable that a reasonable person in the employee's position would feel forced to resign." *Exum v. U.S. Olympic Comm.*, 389 F.3d 1130, 1135 (10th Cir. 2004) (citing *Pa. State Police v. Suders*, 542 U.S. 129, 159 (2004)). "'Essentially, a plaintiff must show that []he had no other choice but to quit.'" *Sanchez v. Denver Pub. Schs.*, 164 F.3d 527, 534 (10th Cir. 1998) (quoting *Yearous v. Niobrara County Mem'l Hosp.*, 128 F.3d 1351, 1356 (10th Cir. 1997)). "[A] plaintiff who voluntarily resigns cannot claim that he or she was constructively discharged." *Exum*, 389 F.3d at 1135. The voluntariness of a plaintiff's decision to quit or resign is judged under an objective standard. *Id.* at 1135 (citing *Yearous*, 128 F.3d at 1356).

Essentially, Defendants argue that Plaintiff has not shown a work environment that is intolerable. They argue that regardless of what Plaintiff subjectively believed he would be subjected to in the future, a reasonable person in Plaintiff's position would not have felt compelled to quit. In response, Plaintiff argues that his working conditions were intolerable because he was barred from the workplace, placed on administrative leave, investigated, forced to work the graveyard shift, forced to work without a personal desk or computer, and his access to the building was restricted. Again, however, even if I disregarded failure to exhaust and all these actions were considered, they do not rise to the level of creating a work environment that is so intolerable that a

reasonable person would resign. "'The question is not whether working conditions at the facility were difficult or unpleasant" but is whether a reasonable person would feel compelled to quit. *Id.* at 1135. At worst, Plaintiff has alleged facts that made his employment more unpleasant or inconvenient. They are not facts that raise a genuine issue as to whether a reasonable person would feel compelled to quit. Therefore, summary judgment on Plaintiff's Second Claim should be granted in favor of Defendants.

### 4. Family Medical Leave Act (FMLA)

A *prima facie* case of retaliation based on the Family Medical Leave Act requires "(1) protected employee action; (2) adverse action by an employer either after or contemporaneous with the employee's protected action; (3) a causal connection between the employee's action and the employer's adverse action." *Morgan v. Hilti, Inc.*, 108 F.3d 1319, 1324 (10th Cir. 1997) (citing *Berry v. Stevinson Chevrolet*, 74 F.3d 980, 985 (10th Cir. 1996)). Although not raised by Defendants in their argument for summary judgment of the FMLA claim, Defendants argue in their brief that Plaintiff has not suffered any adverse employment action. As discussed above, I agree. Therefore, Defendants motion for summary judgment with respect to the Eleventh Claim should be granted.

### 5. Rehabilitation Act

Plaintiff's Twelfth Claim alleges that Defendants violated the Rehabilitation Act by discriminating and retaliating against him based on a disability. Defendants argue that Plaintiff fails to meet his *prima facie* burden. To establish a *prima facie* case under

the Rehabilitation Act, a plaintiff must show (1) he is disabled within the meaning of the Act; (2) he is qualified for the job with or without accommodation; and (3) he was discriminated against because of the disability. *Woodman v. Runyon*, 132 F.3d 1330, 1338 (10th Cir. 1997). The Rehabilitation Act defines disability as "a physical or mental impairment that substantially limits one or more major life activities." 29 U.S.C. § 705(9)(B). The standards used to determine violations are "the standards applied under [T]itle I of the Americans with Disabilities Act of 1990." *Id.* § 793(d); *see also McGuinness v. Univ. N.M. Sch. Medicine*, 170 F.3d 974, 980 ("The statute defines 'disability' in the same way as the ADA.").

Defendants argue that Plaintiff is not disabled within the meaning of the Act, that he is not qualified for his position because he cannot lift fifty pounds, and that there is no evidence that his discharge or any other employment actions were the result of discrimination based on his disability. Plaintiff argues that he is disabled because his back injury limits his ability to engage in certain physical activities, namely to push, pull, and lift. "Major life activities" are defined by the EEOC as "functions such as caring for oneself, performing manual tasks, walking, seeing, hearing, speaking, breathing, learning, and working." 29 C.F.R. § 1630.2(i). It appears, although it is not completely clear, that Plaintiff is arguing that his ability to work is impaired by his back injury. However, with respect to working, "[t]he inability to perform a single, particular job does not constitute a substantial limitation in the major life activity of working." *Id.* § 1630.2(j)((3)(i). Rather, the inquiry is whether the impairment restricts a plaintiff's ability to perform "a class of jobs or a broad range of jobs in various classes as

19

compared to the average person having comparable training, skills and abilities." *Id.* In this case, Plaintiff's inability to push, pull, or lift does not exclude him from a broad range of jobs or a class of jobs for which others with similar skills and training is qualified. Plaintiff has a college degree, is bilingual, and was previously the Director of the Migrant Health Training Program. His limited ability to push, pull, and lift does not substantially limit his ability to perform a class of jobs or a broad range of jobs that others similarly situated are qualified to perform. Therefore, I conclude that Plaintiff is not a disabled person within the meaning of the Rehabilitation Act and that he has failed to meet his *prima facie* burden. Summary judgment for Defendants should be granted with respect to Plaintiff's Twelfth Claim.

Accordingly, it is ordered:

1.   Defendants' motion for summary judgment, filed October 25, 2006 (Docket No. 112) is granted and all pending claims (First, Second, Ninth, Tenth, Eleventh, and Twelfth) shall be dismissed with prejudice.

2.   Defendants may have their costs.

DATED at Denver, Colorado, on September 18, 2007.

BY THE COURT:

s/ Walker D. Miller
United States District Judge

20