IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
JUDGE WALKER D. MILLER

Civil Action No. 03-cv-02122-WDM-CBS

THOMAS R. CISNEROS,

    Plaintiff,

v.

STATE OF COLORADO, *et al.*,

    Defendants.

## ORDER ON MOTION FOR AMENDMENT

Miller, J.

This matter is before me on Plaintiff's "Motion for Amendment and Modification of the Court's Order Summary of Judgment [sic] Order and Entry of Judgment" (Docket No. 201) ("motion for amendment"). After a review of the pleadings and the parties' written arguments, I conclude oral argument is not required. For the reasons that follow, the motion for amendment shall be denied.

### Background[1]

This case centers around Plaintiff's employment with Defendants. In 2001 Plaintiff was employed by the Colorado Department of Labor and Employment ("CDLE"). During his employment at CDLE, Plaintiff suffered a back injury which prohibited him from engaging in certain lifting, pushing, and pulling activities. During

---

[1] For a full description of the relevant facts of the case, see my Order dated September 19, 2007 (Docket No. 193).

his employment, Plaintiff was repeatedly placed on the graveyard shift, at times at Plaintiff's request and at times in spite of Plaintiff's requests to be placed on the day shift. Plaintiff alleges that he began requesting to return to the day shift as early as April 1999.

Plaintiff's employment with CDLE was in the Information Management Office with the Computer Operations Support Unit. Wilbert Velasquez was the manager of the unit until his retirement in December 2001. At that time, Defendant Sam Jorgensen became the acting supervisor and was later permanently appointed to the position. Plaintiff alleges that the decision to promote Jorgensen rather than him was discriminatory in nature. Notably, prior to his promotion to supervisor, Jorgensen made a comment to another co-worker that he would fire Plaintiff if he was able.

The other incident relevant to this motion occurred on February 7, 2002. On that day Plaintiff arrived at work but discovered that his key card to the building did not work. He was, however, let into the building by another co-worker. Plaintiff then called his wife from his desk who misinterpreted the situation and called the police to report a hostage situation. The police arrived, investigated the incident, and escorted Plaintiff from the building. CDLE instituted an internal investigation into the incident and placed Plaintiff on administrative leave. During his leave, Plaintiff had back surgery. He returned to work in June 2002 but resigned at the end of June allegedly because he was constructively discharged by being placed on the graveyard shift, being required to share a desk and computer, and other various issues. After filing a

complaint with the Equal Employment Opportunity Commission ("EEOC")[2] and receiving a right to sue letter, Plaintiff filed this action.

Standard of Review

"The Federal Rules of Civil Procedure do not recognize a 'motion to reconsider.' Instead the rules allow a litigant subject to an adverse judgment to file either a motion to alter or amend the judgment pursuant to Fed. R. Civ. P. 59(e) or a motion seeking relief from the judgment pursuant to Fed. R. Civ. P. 60(b)." *Van Skiver v. United States*, 952 F.2d 1241, 1243 (10th Cir. 1991). Fed. R. Civ. P. 59(e) will govern when the motion for reconsideration is filed within ten days of the judgment and Fed. R. Civ. P. 60(b) will govern all other motions. *Id.*

A motion for reconsideration is limited to a narrow set of circumstances: it "is appropriate where the court has misapprehended the facts, a party's position, or the controlling law. . . . It is not appropriate to revisit issues already addressed or advance arguments that could have been raised in prior briefing." *Servants of the Paraclete v. John Does, I-XVI*, 204 F.3d 1005, 1012 (10th Cir. 2000) (citing *Van Skiver*, 952 F.2d at 1243). "Grounds warranting a motion to reconsider include (1) an intervening change in the controlling law, (2) new evidence previously unavailable, and (3) the need to correct clear error or prevent manifest injustice." *Id.* (citing *Brumark Corp. v. Samson Resources Corp.*, 57 F.3d 941, 948 (10th Cir. 1995)). This same standard has been applied to both Rule 59(e) motions, *see id.*; *Schlussler-Womak v. Chickasaw Tech*

---

[2] Plaintiff filed his EEOC charge on April 24, 2002.

*Prod.*, 116 Fed. Appx. 950 (10th Cir. 2004) (unpublished),³ and Rule 60(b) motions, *see Lyons v. N.M. Dep't of Corr.*, 12 Fed. Appx. 772, 773 (10th Cir. 2001) (unpublished); *Adams v. Anderson*, 12 Fed. Appx. 910, 914 (10th Cir. 2001) (unpublished).

In this case, Plaintiff filed a motion for an extension of time within ten days of my September 19, 2007 Order (Docket No. 195), which was granted. Plaintiff filed another motion for an extension of time on the extended due date (Docket No. 200), and filed the motion for amendment within the time requested in that motion. As the second motion for an extension of time was timely made and was for only one business day, I conclude that it is appropriate to grant the second motion for an extension of time and consider Plaintiff's motion for amendment as a motion made pursuant to Fed. R. Civ. P. 59(e).

Discussion

1. Hostile Work Environment

Plaintiff first argues that "the Court too narrowly construes the acts for supporting the hostile work environment claim."⁴ (Pl.'s Mtn. at 2.) He argues that my

---

³ Although the Tenth Circuit does not allow citation to unpublished opinions for precedential value, unpublished opinions may be cited for persuasive value. 10th Cir. R. 32.1.

⁴ As part of Claim Two, Plaintiff's amended complaint asserts that Defendants intentionally created a hostile work environment in retaliation for Plaintiff's engaging in protected activity, namely stating his intent to file and filing a charge of discrimination with the EEOC. However, Plaintiff's motion for amendment appears to indicate that Plaintiff is also making a claim for hostile work environment separate from his retaliation claim. Although I do not find evidence of this in the complaint, I will address this claim in this Order.

September 19, 2007 Order erroneously excluded from consideration incidents that occurred outside the limitations period.  *See Simms v. Oklahoma ex. Rel., Dep't of Mental Health and Substance Abuse Servs.*, 165 F.3d 1321, 1326 (10th Cir. 1999) (holding that "a plaintiff may not normally bring a Title VII action based upon claims that were not part of a timely-filed EEOC charge" which must be brought within 300 days of the incident); *Duncan v. Manager, Dep't of Safety*, 397 F.3d 1300, 1308 (10th Cir. 2005) (holding that in a hostile work environment claim a court may consider acts outside the limitations period if the acts are related in "type, frequency, and perpetrator" to acts within the limitations period).  Plaintiff alleges that the following acts should have been considered in the hostile work environment analysis: (1) Plaintiff's placement on the graveyard shift; (2) Defendant Jorgensen's November 2001 statement that he would fire Plaintiff if he had the ability; (3) Plaintiff's removal from the workplace on February 7th and subsequent placement on administrative leave; (4) Jorgensen's alleged lies to the police regarding the February 7 incident; (5) "the targeting of [Plaintiff] for disciplinary action"[5]; (6) denial of transfer of sick leave; and (7) constructive discharge.  (*See* Pl.'s Mtn. at 3–5.)  Plaintiff also generally alleges that there was a hostile work environment due to "an ongoing pattern of conduct that was directed toward him designed to run him out of employment, or make working conditions so difficult that it forced his resignation, by altering his terms and conditions of employment" and that this "clear pattern existed within the prescribed 300 day period of the Defendants attempting to rid themselves of [Plaintiff] by making the

---

[5]  Plaintiff's motion is unclear in exactly what incidents or events this allegation encompasses.

environment so uncomfortable for him that he would quit." *Id.* at 4–5.

Plaintiff's arguments, however, are not appropriate for a Rule 59(e) motion. Plaintiff is not arguing that I have misapprehended the facts, his position, or the controlling law; rather, Plaintiff is simply revisiting issues already addressed and raising issues that could have been raised earlier. *See Servants of the Paraclete*, 204 F.3d at 1012 (citing *Van Skiver*, 952 F.2d at 1243). First, I have already addressed whether the shift assignments, lack of access to a desk or computer, denial of access to the building with a key, transfer of sick leave, and constructive discharge were sufficiently related in "type, frequency, and perpetrator" to events that occurred within the limitations period such that they could be included in the hostile work environment claim. (*See* Sept. 19, 2007 Order at 8–9.) I determined that all but the shift assignments were not so related but nonetheless included all of the alleged events in the hostile work environment analysis. Second, I assumed for purposes of the motion for summary judgment that Plaintiff had exhausted his remedies with respect to constructive discharge and addressed the claim. Therefore, Plaintiff's argument that I erroneously excluded this event is not applicable. Finally, Plaintiff failed to assert the remaining events[6] in his response to the motion for summary judgment and, therefore, is precluded from raising them now. Indeed, in his response, Plaintiff merely stated that "there is clear evidence of pervasive and severe actions" including "no keys to the entrance, no desk, no computer and ultimately being forced to return to the graveyard

---

[6] The additional events Plaintiff argues were not considered in my previous hostile work environment analysis all fall within the limitations period. Therefore, I need not address whether they are related by "type, frequency, and perpetrator" to the actions within the limitations period.

shift." (*See* Docket No. 191 at 32–33, 38, 40.) Again, I note that I addressed each of these items as well as the transfer of sick leave and constructive discharge issues in the September 19, 2007 Order.

Furthermore, I conclude that the addition of these events would not change my hostile work environment analysis. Plaintiff still has not shown an environment that was "pervasive or severe enough to alter the terms, conditions, or privilege of employment." *See Bolden v. PRC, Inc.*, 43 F.3d 545, 551 (10th Cir. 1994) ("Specifically, it must be shown that under the totality of the circumstances (1) the harassment was pervasive or severe enough to alter the terms, conditions, or privilege of employment and (2) the harassment was racial or stemmed from racial animus" (citation omitted)). Even including the lack of a desk and computer, denial of access to the building, and denial of sick leave transfer in the analysis, I concluded that the acts were not sufficient to create a hostile work environment.[7] (Sept. 19, 2007 Order at 16.) The addition of a single comment by Jorgensen in November 2001, alleged lies by Jorgensen in connection with the investigation of the hostage situation, and Plaintiff's placement on administrative leave do not change my conclusion that the alleged harassment was not "severe enough to alter the terms, conditions, or privilege of employment." *See Bolden*, 43 F.3d at 551 (citation omitted).

Additionally, with respect to a standard hostile work environment claim,[8] Plaintiff's allegations also do not demonstrate "more than a few isolated incidents of

---

[7] I considered Plaintiff's claim of constructive discharge separately. (*See* Sept. 19, 2007 Order at 16–18.)

[8] *See supra*, note 3.

racial enmity." *Id.* In fact, Plaintiff alleged only a single comment by a co-worker that even references race (that Plaintiff was a "rigid Hispanic patriarch") and he does not address racial animus at all in his motion for amendment. Therefore, I conclude that Plaintiff has failed to meet his *prima facie* burden with respect to any claim he may have made under standard hostile work environment principles. *See id.*

With respect to his claim for hostile work environment as retaliation for engaging in protected activity, Plaintiff has not alleged any facts beyond mere speculation to demonstrate that the actions by Defendants were causally connected to the charge or allegations of discrimination. *See Hall v. United States Dep't of Labor*, 476 F.3d 847, 851 (10th Cir. 2007) (holding that to show a defendant created a hostile work environment in retaliation for protected activity, a "plaintiff must show that he was targeted for harassment *because* of his protected activity"). Although Plaintiff has provided evidence that he engaged in protected activity by alleging "prejudice" to certain CDLE employees approximately two weeks prior to the February 7, 2002 incident (after which Plaintiff was placed on administrative leave),[9] he has not demonstrated that anyone allegedly participating in the harassment had any knowledge the protected activity when they acted to investigate the February 7, 2002 incident, place Plaintiff on administrative leave, or allegedly lie to the police regarding the incident. Furthermore, the comment by Jorgensen that he would like to fire Plaintiff was made almost three months before Plaintiff claims to have engaged in any protected activity. Similarly, much of Plaintiff's placement on graveyard was prior to

---

[9] Plaintiff's EEOC charge was not filed until late April 2002, approximately two and a half months after he was placed on administrative leave.

any allegations of discrimination.  Therefore, I conclude that there is no reason to amend my earlier determination that Plaintiff's claim for retaliation based on a hostile work environment should be dismissed.

2. <u>Adverse Employment Action</u>

Plaintiff argues that "the Court's holding concerning adverse employment action is controversy [sic] to the liberal standards established by the Tenth Circuit." (Pl.'s Mtn. at 5.)  He contends that it was an adverse employment action to (1) place him on the graveyard shift and (2) escort him from the office and place him on administrative leave.  With respect to the shift assignment, Plaintiff alleges that it can be distinguished from other shift assignment cases, which find that a shift assignment is not an adverse employment action, because his assignment to graveyard caused him to disobey his medically imposed restrictions.  First, I note again that this is not an appropriate argument for a Rule 59(e) motion as I have already addressed whether shift assignments constitute adverse employment actions and Plaintiff could have specifically raised the argument concerning his personal medical issues earlier.  *See Servants of the Paraclete*, 204 F.3d at 1012.  Furthermore, Plaintiff presents no argument or specific factual allegations beyond a conclusory allegation that the shift assignment was "not a mere inconvenience, but a designed plan to drive him from employment" and the "facts of this case are highly different from the traditional shift cases where there is a transfer." (Pl.'s Mtn. at 6.)  Indeed, Plaintiff does not describe how graveyard shift was significantly different than other shifts, even given his medical restrictions, nor which activities were required on graveyard shift that were not required on other shifts.  Therefore, I fail to see how Plaintiff's medical restrictions

cause his shift assignment to constitute "a significant change in employment status, such as . . . reassignment with significantly different responsibilities, or a decision causing a significant change in benefits." *See Burlington Indus. v. Ellerth*, 254 U.S. 742, 761 (1998) (addressing a tangible employment action in vicarious liability context).

Plaintiff argues that his administrative leave was an adverse employment action because it had "elements of fraud and misrepresentation by supervisors to cause and attempt to cause disciplinary action." (Pl.'s Mtn. at 7.) Again, I note that this is not an appropriate issue for a Rule 59(e) motion as Plaintiff could have argued it before. *See Servants of the Paraclete*, 204 F.3d at 1012. Nonetheless, I conclude that allegations of fraud and misrepresentation are insufficient to cause Plaintiff's administrative leave to constitute "a significant change in employment status." *See Ellerth*, 254 U.S. at 761; *see also Joseph v. Leavitt*, 465 F.3d 87, 91 (4th Cir. 2006) (holding that administrative leave with pay during an investigation and pending criminal trial is not an adverse employment action and cataloguing the other four circuits to hold the same). Therefore, I conclude that modification of my decision concerning adverse employment actions is not appropriate.

3. <u>Constructive Discharge</u>

Next, Plaintiff argues that the September 19, 2007 Order failed to consider all factors involved in the constructive discharge claim because it did not consider Plaintiff's "personal circumstances as an element of the constructive discharge." (Pl.'s Mtn. at 8.) Plaintiff alleges that his personal medical problems caused assignment on the graveyard shift to be intolerable to the point that he was forced to quit. However,

even taking into consideration Plaintiff's personal circumstances, Plaintiff's allegations are insufficient to demonstrate that he was constructively discharged. As a claim for constructive discharge is essentially an aggravated case of hostile work environment, *see Hall*, 476 F.3d at 852, Plaintiff's claim for constructive discharge fails for the same reasons his claim for hostile work environment fails. In particular, Plaintiff has not demonstrated that the circumstances were so severe that he was forced to quit. *See Exam. v. U.S. Olympic Comm.*, 389 F.3d 1130, 1135 (10th Cir. 2004) (holding that constructive discharge occurs when "an employer, through unlawful acts, makes working conditions so intolerable that a reasonable person in the employee's position would feel forced to resign" (citing *Pa. State Police v. Seders*, 542 U.S. 129, 159 (2004))). Indeed, Plaintiff has come forth with no allegations of how the graveyard shift was intolerable besides general complaints that he did not like it and that he was sometimes unable to abide by his medical restrictions while on this shift. Such general allegations, however, are insufficient to demonstrate a workplace that was so intolerable that Plaintiff was forced to quit.

Furthermore, Plaintiff has not alleged any facts that demonstrate that the acts constituting a hostile environment, which allegedly caused Plaintiff's constructive discharge, were motivated by a racial animus or causally connected to a claim of discrimination. Again, Plaintiff alleged only one instance that included a racial component. He has also not demonstrated that the shift assignment was in any way connected to Plaintiff's allegations of discrimination, including that the person making the shift assignments knew of the protected activity. Therefore, even assuming for purposes of this motion that the workplace was intolerable to Plaintiff, he has not

demonstrated the other required elements to meet his *prima facie* burden. Modification is not appropriate on Plaintiff's constructive discharge claim.

4. Rehabilitation

My September 19, 2007 Order dismissed Plaintiff's Rehabilitation Act (the "Act") claim because Plaintiff failed to meet his *prima facie* burden that he was disabled within the meaning of the Act. Although not fully developed, Plaintiff appears to argue that he is disabled within the meaning of the Act because (1) Defendants regarded him as disabled and (2) he is limited in his ability to perform manual tasks.[10] Plaintiff is correct in noting that the Rehabilitation Act protects those who are "regarded as" disabled as well was those who are actually disabled.

> [A]lthough the Rehabilitation Act itself defines the term "disabled" to mean "a physical or mental impairment that substantially limits one or more major life activities," . . . 29 U.S.C. § 705(9)(B), the ADA[11] expands the term "disability" to mean any of the following:
> (A) a physical or mental impairment that substantially limits one or more of the major life activities of such individual;
> (B) a record of such an impairment; or
> (C) being regarded as having such an impairment.

*McGeshick v. Principi*, 357 F.3d 1146, 1150 (10th Cir. 2004) (citing 42 U.S.C. § 12102(2) and EEOC Interpretive Guidelines for the Rehabilitation Act, 29 C.F.R. § 1614.203(b)). Under subsection C, a person is "regarded as" being disabled within the

---

[10] I note that Plaintiff's motion also addresses Defendant's failure to provide accommodation for Plaintiff's impairment. However, because I find that Plaintiff has not met his *prima facie* burden of demonstrating that he is disabled within the meaning of the Act, I need not address the issue of accommodation.

[11] To determine violations, the Rehabilitation Act uses the "standards applied under [Title] I of the Americans with Disabilities Act of 1990" [("ADA")] including the definition of disabled. 29 U.S.C. § 793(d); *McGuinness v. Univ. N.M. Sch. Med.*, 170 F.3d 974, 980 (10th Cir. 1998) ("The [Rehabilitation Act] defines 'disability' in the same way as the ADA.").

ADA if "(1) a covered entity mistakenly believes that a person has a physical impairment that substantially limits one or more major life activities, or (2) a covered entity mistakenly believes that an actual, nonlimiting impairment substantially limits one or more major life activities." *Sutton v. United Airlines, Inc.*, 527 U.S. 471, 489 (1999). Therefore, to meet his *prima facie* burden, Plaintiff must show that Defendants "perceived his symptoms to have actually been disabling as defined by the Rehabilitation Act and the ADA." *McGeshick*, 357 F.3d at 1151. Plaintiff has failed to meet this burden.

"To be substantially limited in a major life activity, 'an individual must have an impairment that prevents or severely restricts the individual from doing activities that are of central importance to most people's daily lives.'" *Id.* at 1150 (quoting *Toyota Motor Mfg., Ky., Inc. v. Williams*, 534 U.S. 184, 198 (2002)). An employer "is free to decide that some limiting, but not *substantially* limiting, impairments make individuals less than ideally suited for a job." *Sutton*, 527 .S. at 489. Furthermore, "when the major life activity under consideration is that of working, the statutory phrase 'substantially limits' requires, at a minimum, that plaintiffs allege they are unable to work in a broad class of jobs." *Id.* at 491. Plaintiff has not demonstrated that Defendants regarded him as substantially limited and unable to work in a broad class of jobs—his citations to letters by and warnings from Defendants reference only his employment in his current position. Therefore, I conclude that Plaintiff has not met his *prima facie* burden of showing that Defendants' regarded him as substantially limited in the major life activity of working.

Plaintiff's second argument is that he is disabled or regarded as disabled

because his pushing, pulling, and lifting restrictions impair his "everyday life functions, including manual tasks." To show that he is disabled on this basis, Plaintiff must submit evidence that he has personally experienced substantial limitation(s) caused by the impairment(s). *See Toyota Motor*, 534 U.S. at 198. He must demonstrate that the impairment "prevents or severely restricts [him] from doing activities that are of central importance to most people's daily lives." *Id.* Furthermore, the impairment must be "permanent or long term." *Id.* In this case, Plaintiff has failed to meet this burden. Indeed, he merely alleges that his pushing, pulling, and lifting restrictions affect his everyday life and does not provide any detail in the extent of the effect on his daily life nor the duration or permanency of his impairment. He also does not provide any evidentiary support that Defendants believed that he could not perform tasks that are "of central importance to most people's daily lives." *Id.* Therefore, I conclude that Plaintiff has not met his *prima facie* burden to show he was disabled under the Act by alleging he is unable to perform manual tasks. Modification of my previous Order is not appropriate with respect to this claim.

5.  Retaliation

Finally, Plaintiff argues that his retaliation claim should not have been dismissed because the wrong standard was applied in my September 19, 2007 Order. I agree that the Supreme Court's ruling in *Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 67–68 (2006), altered the governing standard for retaliation. *Burlington* held that, to sustain a retaliation claim, a plaintiff need not show an adverse employment action, but, instead, must show that "a reasonable employee would have found the challenged action materially adverse, which in this context means it well might have dissuaded a

reasonable worker from making or supporting a charge of discrimination." *Burlington*, 548 U.S. at 68 (quotations and citation omitted). Therefore, to meet his *prima facie* burden, Plaintiff must show "(1) that he engaged in protected opposition to discrimination, (2) that a reasonable employee would have found the challenged action materially adverse, and (3) that a causal connection existed between the protected activity and the materially adverse action." *Somoza v. Univ. of Denver*, 513 F.3d at 1206, 1212 (10th Cir. 2008) (citing *Argo v. Blue Cross & Blue Shield of Kan., Inc.*, 452 F.3d 1193, 1202 (10th Cir. 2006)). Plaintiff alleges that his placement on administrative leave and the investigation of him for disciplinary action constitute actions that a reasonable employee would find material adverse and could dissuade a reasonable employee from engaging in protected activity. Even assuming this is true for purposes of this motion, however, Plaintiff has not established a causal connection between the administrative leave and investigation and his opposition to discrimination. As noted above, Plaintiff has not demonstrated that the decision-makers had any knowledge of the claim of "prejudice" in January 2002 when they made the decision to place Plaintiff on administrative leave nor when they investigated Plaintiff's conduct in connection with the February 2002 hostage incident. Therefore, Plaintiff has failed to meet his *prima facie* burden with respect to his retaliation claim.

    I conclude that none of Plaintiff's arguments in his motion for amendment warrant amendment or modification of my September 19, 2007 Order which determined that Plaintiff's claims should be dismissed. However, as I have altered the basis for some of my rulings, I believe it is appropriate to amend the September 19, 2007 Order to include this Order and the contained analyses.

Accordingly, it is ordered:

1. Plaintiff's Motion for Extension of Time (Docket No. 200) is granted.

2. Plaintiff's Motion for Amendment and Modification of the Court's Order Summary of Judgment Order and Entry of Judgment (Docket No. 201) is denied.

3. The September 19, 2007 Order (Docket No. 193) is amended to include the analyses contained in this Order.

DATED at Denver, Colorado, on June 25, 2008.

BY THE COURT:

s/ Walker D. Miller
United States District Judge